IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| J.C. as mother and legal guardian of I.R. (a minor), | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | FILE NO.: |
| RITI, INC d/b/a AMERICAN INN & SUITES, | : | |
| | : | |
| Defendant. | : | |

# COMPLAINT

Matthew B. Stoddard
Janelle E. Zabresky
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
F: 470-467-1300
matt@legalhelpga.com
janelle@legalhelpga.com

**Attorneys for Plaintiff**

## TABLE OF CONTENTS

Introduction.............................................................................................3

The Parties..............................................................................................6

Procedural Issues....................................................................................6

Fifteen-Year-Old I.R. Is Trafficked for Sex............................................7

Defendant Had Extensive Knowledge of Trafficking at Its Hotel...........9

    A.    The Industry Knowledge.............................................................9

    B.    The Online Reviews...................................................................14

    C.    The Law Enforcement Activity.................................................18

    D.    The Prior Trafficking Lawsuit..................................................20

Defendant Had Knowledge That I.R. Was Being Trafficked.................22

COUNT 1:  TVPA Civil Beneficiary Claims.........................................28

COUNT 2:  State Law RICO Claims.....................................................32

COUNT 3:  State Law Negligence Claims.............................................36

Proximate Cause and Damages.............................................................38

Conclusion and Prayer for Relief..........................................................40

## SUMMARY

1.     This lawsuit involves the sex trafficking of a child.

2.     Defendant Riti, Inc. d/b/a American Inn & Suites ("Riti") has owned and managed the Jonesboro American Inn & Suites f/k/a Americas Best Value Inn (located at 6358 Old Dixie Hwy, Jonesboro, Georgia) since 2007.

3.     The Jonesboro American Inn & Suites is a notorious hotspot for illicit activity that has been attracting sex trafficking and prostitution ventures for years.

4.     In March 2020, fifteen-year-old I.R. was trafficked for sex at the American Inn & Suites by non-party Shanequa Welch.

5.     The purpose of this lawsuit is to hold Defendant Riti accountable for allowing the trafficking to occur, empower and seek justice for I.R., and help prevent the trafficking of new victims by either putting Defendant Riti out of business or forcing Defendant Riti to change its conduct.

6.     Prior to I.R.'s trafficking, Defendant Riti was on notice about the prevalence of sex trafficking, prostitution, drug sales, and violent crime at the Jonesboro American Inn & Suites.  Such notice came through publicly available information (such as its online reviews), law enforcement activity at the hotel (which frequently describe the crime problem), notice from guests (who reported the

problems), and prior sex trafficking lawsuits that informed Defendant Riti about the sex trafficking at its hotel.

7.      Despite its knowledge, Defendant refused to take any action to deter sex trafficking and in fact aided the sex trafficking by acting as a look out / alerting traffickers about the comings and goings of law enforcement.

8.      Defendant performed these acts because Defendant wished to continue (and did continue) to make money from the rooms it rented for this explicit and apparent purpose.

9.      In addition to its prior knowledge of frequently renting rooms for sex trafficking ventures generally, Defendant Riti had both actual and constructive knowledge that I.R. was being trafficked at Defendant's hotel in March of 2020, but Defendant continued to rent rooms to I.R.'s traffickers so that the trafficking could continue.

10.     As a result, this lawsuit seeks to hold Defendant Riti liable under three separate statutory schemes.

11.     *First*, this lawsuit seeks to hold Defendant Riti liable under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. 1595(a) ("TVPA") which provides a cause of action to victims of sex trafficking against "whoever knowingly benefits, financially or by receiving anything of value from participation

in a venture which that person knew or should have known has engaged in an act in violation of" the TVPA.

12.    Defendant Riti violated this statute because it knowingly benefited from participation in a venture by engaging in a pattern of acts and omissions which it knew or should have known violated the TVRA by: (i) repeatedly renting rooms to people it knew or should have known were engaged in sex trafficking, including the sex trafficking of I.R; (ii) collecting revenue from the rental of those rooms; and (iii) choosing to do these things so it could continue to profit from the business that sex trafficking brings.

13.    **Second**, this lawsuit seeks to hold Defendant Riti liable under Georgia's Racketeer Influenced and Corrupt Organizations Act ("Georgia RICO"), which makes it is unlawful for anyone to acquire an interest in or control of money or property through "a pattern of racketeering activity."  O.C.G.A. § 16-4-4(a).

14.    Defendant acquired money through a pattern of racketeering activity by receiving money for keeping a place of prostitution and exercising control over the hotel for the purpose of prostitution in violation of O.C.G.A. § 16-4-4(a) and O.C.G.A. § 16-6-10 on more than on occasion. *See* O.C.G.A. § 16-14-3(5)(A)(vii).

15.    **Third**, this lawsuit seeks to hold Defendant Riti liable under state law negligence statutes for failing to use reasonable care to make its property safe and

by harboring a criminal nuisance on its property in violation of O.C.G.A. § 51-3-1 and O.C.G.A. § 44-1-1 and other Georgia statutes and common law.

16.     As shown herein, I.R.'s injuries were proximately caused by Defendant Riti's actions and inactions which violated the laws of the United States and the State of Georgia.

## THE PARTIES

17.     Plaintiff J.C. is the biological mother and legal guardian of I.R.

18.     Plaintiff J.C. is a resident and citizen of Georgia.

19.     Plaintiff J.C. consents to the jurisdiction of this Court.

20.     I.R. is a minor, a citizen of Georgia, and a resident of Georgia.

21.     I.R. also consents to the jurisdiction of this Court.

22.     Defendant Riti is a domestic corporation with its principal place of business located at the site of the Jonesboro American Inn & Suites: 6358 Old Dixie Hwy, Jonesboro, Georgia.

## PROCEDURAL ISSUES

23.     Given the nature of the case, I.R. and her legal guardian J.C. are identified in this Complaint only by their initials to prevent public disclosure of I.R.'s name. Plaintiff's counsel has either previously disclosed I.R.'s full name to defense counsel or will immediately upon identification of additional counsel. When

filing this Complaint, Plaintiff's counsel also filed a Motion for Protective Order seeking Court permission for Plaintiff and I.R. to proceed anonymously. Upon information and belief, Defendant will consent to Plaintiff and I.R. proceeding without publicly disclosing their names.

24.     Defendant Riti can be served through its registered agent Kausha Patel at 6358 Old Dixie Hwy, Jonesboro, Clayton County Georgia.

25.     Defendant Riti was properly served with process in this matter.

26.     Defendant Riti is subject to the jurisdiction and venue of this Court.

27.     Jurisdiction is proper in this Court under 28 U.S.C. § 1331 (federal question jurisdiction) because this matter concerns the Trafficking Victims Protection Reauthorization Act which is a law of the United States.

28.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in Jonesboro Georgia which is within the Northern District of Georgia Atlanta division. *See* 28 U.S.C. § 1391.

## FIFTEEN-YEAR-OLD I.R. IS TRAFFICKED FOR SEX

29.     Fifteen-year-old I.R. was forced to have sex for money at the Jonesboro American Inn & Suites for five (5) consecutive days a week for at least two (2) weeks in March 2020.

30.     During this period, Shanequa Welch and her associates rented rooms at the Jonesboro American Inn & Suites from Defendant.

31.     Welch or her associates would pay in cash for one night at a time, booking the next night's stay before check-out time each morning.

32.     Defendant Riti collected revenue from rental of the rooms at the Jonesboro American Inn & Suites in which I.R. was forced to have sex.

33.     To control I.R. during the duration of I.R.'s stay at the Jonesboro American Inn & Suites, Welch carried handguns, threatened I.R. with bodily harm, and forced I.R. to take drugs.

34.     Welch did not refer to I.R. as a person.  Instead, Welch referred to I.R. as "her property."

35.     During the period I.R. was trafficked at the Jonesboro American Inn & Suites, Welch required I.R. to meet a daily quota of $1,000 per day.

36.     The frequency of the trafficking was such that I.R. was raped at Defendant's hotel by more than thirty-six (36) adult male visitors in a single day.

37.     In short, the following happened repeatedly: a buyer came to Defendant's hotel and purchased the "right" to have sex with I.R. from Welch and her associates, then the buyer raped I.R. in Defendant's hotel – often in front of Welch.

38.     While at Defendant's hotel, and to ensure I.R.'s submission and control, Welch would drug I.R., refer to I.R. as "her property", and remain in the room while buyers had sex with I.R.

39.     Welch took photographs and videos of I.R. at the Jonesboro American Inn & Suites, and then used those photographs and videos in online advertisements to bring more buyers to Defendant's hotel.

40.     At the same time I.R. was being trafficked at Defendant's hotel, Welch was also trafficking another minor for sex out of the same rooms where Welch was trafficking I.R.

## DEFENDANT HAD EXTENSIVE
## KNOWLEDGE OF TRAFFICKING AT ITS HOTEL

### A.     The Industry Knowledge

41.     Defendant knew or should have known of the existence of sex trafficking and its illegality since the passage of the Trafficking Victims Protection Act in 2000, and the United Nations' Palermo Protocol to Prevent, Suppress, and Punish Trafficking in Persons, Especially Women and Children also in 2000, and the passage of O.C.G.A. § 16-5-46 in 2007.

42.     Defendant knew or should have known that, in 2013, the acting Attorney General Sam Olens announced a statewide campaign, "Georgia's Not

Buying It," to combat child sex trafficking. As part of the campaign, AG Olens' office "collaborated with partners to conduct trainings and increase awareness," which included "multiple trainings for the hotel industry."[1]

43.    Defendant knew or should have known that the Georgia legislature passed O.C.G.A. § 16-5-47 in 2013, which required hotels to post sex trafficking notices "in each public restroom for the business or establishment and either in a conspicuous place near the public entrance of the business or establishment or in another conspicuous location in clear view of the public and employees where similar notices are customarily posted."

44.    Defendant knew or should have known that the Federal Bureau of Investigations ranked Atlanta one of the worst cities in the country for child sex trafficking.[2]

45.     Defendant knew or should have known that as early as 2001, City of Atlanta officials publicly warned of sex trafficking at area hotels and of the

---

[1] *See* https://law.georgia.gov/press-releases/2013-03-18/attorney-general-olens-law enforcement-announce-campaign-fight-sex (last visited Feb. 11, 2022).

[2] Chris Swecker testimony to the Commission on Security and Cooperation in Europe United States Helsinki Commission, Exploiting Americans on American Soil: Domestic Trafficking Exposed, The Federal Bureau of Investigation, (June 7, 2005), available at https://archives.fbi.gov/archives/news/testimony/exploiting-americans-onamerican-soil-domestic -trafficking-exposed (last visited Feb. 11, 2022).

relationship between prostitution and sex trafficking. At that time, the Atlanta Journal-Constitution published a groundbreaking series called *Selling Atlanta's Children*, explaining the problem of sex trafficking in the City and that hotels are complicit in sex trafficking trade.[3]

46.    Defendant knew or should have known that the Atlanta metro-area well-publicized reputation as an "epicenter for human trafficking, and particularly child sex trafficking," and as "the number one city for child sex trafficking."[4]

47.    Defendant knew or should have known that in 2007, the Atlanta metro-area's sex trafficking economy was worth almost $300 million annually with traffickers reporting average *weekly* earnings of roughly $33,000.[5]

---

[3] Jane O. Hansen, Selling Atlanta's Children: Runaway Girls Lured into the Sex Trade are being Jailed for Crimes while their Adult Pimps go Free, The Atlanta Journal-Constitution, Jan. 7, 2001; Jane O. Hansen, The Pimps: Prostitution's Middle Man Slides by in Court, The Atlanta Journal-Constitution, Jan. 7, 2001; Jane O. Hansen, Feds, Police Elsewhere Finding Solutions, The Atlanta Journal-Constitution, Jan. 8, 2001 ("Atlanta City Councilman Derrick Boazman said it's also time to crack down on hotels where adult men take children. 'We need to go after these hotel owners who should know what's happening when someone walks in with a 13-year-old girl,' Boazman said."); Jane O. Hansen, When Danger is as Close as a Phone, The Atlanta Journal-Constitution, Jan. 9, 2001; Jane O. Hansen, Police Plan Child Prostitution Unit, The Atlanta Journal-Constitution, April 28, 2001.

[4] Sally Yates, *Remarks at Justice Department Event Marking National Slavery and Human Trafficking Prevention Month*, Jan. 29, 2015, *available at* https://www.justice.gov/opa/speech/acting-deputy-attorney-general-sally-quillian-yates-delivers-remarks-justice-department (last visited Feb. 09, 2022).

[5] Christian Boone, *Study: Atlanta's Sex Trade Highly Profitable*, Atlanta Journal-Constitution, (March 13, 2014) available at https://www.ajc.com/news/crime--law/study-atlanta-sex-trade-highly-profitable/GiuU5vZdoUo5vdUYSaOBNM.

11

48.     Defendant knew or should have known that the organization called End Child Prostitution and Trafficking (ECPAT-USA) launched the Tourism Child Protection Code of Conduct (the "Code") which outlines well-established best practices for the hospitality industry to combat sex trafficking, and identifies six simple steps hotels can take to prevent child sex trafficking, such as:

a.      establishing corporate policies and procedures against sexual exploitation of children;

b.      training employees in children's rights, the prevention of sexual exploitation and how to report suspected cases;

c.      including a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children;

d.      providing information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases;

e.      supporting, collaborating, and engaging stakeholders in the prevention  of sexual exploitation of children; and

f.      reporting annually on the company's implementation of Code-related  activities.[6]

49.     Defendant knew or should have known that, compared to other types of

---

[6]  *See* ECPAT-USA, *The Tourism Child-Protection Code of Conduct*, *available at* www.ecpatusa.org/code/ (last visited Feb. 11, 2022).

businesses,[7] hotels play a critical role in sex trafficking ventures and serve "a particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking. Offering privacy and anonymity on the cheap, they have been employed as . . . rendezvous sites where child sex workers meet their clients on threat of violence from their procurers[.]" *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J., dissenting, joined by Chief Justice Roberts and Justice Thomas).

50.    Defendant knew or should have known that "[t]he hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity… From check-in to check-out there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property… With proper training, a front desk agent or a housekeeper can notice that something is not right and respond."[8]

51.    Defendant knew or should have known that, without a venue, or crime scene, a sex trafficking venture ceases to exist.

---

[7] *Cf. Sun Tr. Banks, Inc. v. Killebrew*, 266 Ga. 109, 111 (1995) (Sears, J., concurring) ("[T]he banking industry itself anticipates that criminal activity will frequently occur at ATMs."); *Killebrew v. Sun Trust Banks*, 221 Ga. App. 679, 680-81 (1996) (physical precedent only) ("it would be difficult to say that a criminal occurrence at an ATM is unforeseeable as a matter of law. Indeed, such a conclusion could be reached only by turning 'foreseeability' into a legal term of art totally divorced from its meaning in everyday usage.")

[8] *See* https://www.ecpatusa.org/hotel-training (last visited Feb. 7, 2022) (emphasis added).

52.     At all relevant times, Defendant knew or should have known that there was a heightened risk that sex trafficking could take place at its facility as compared to taking place at other locations because of: (i) extensive private sector / non-profit publications informing the public that motels were a hotbed of sex trafficking, (ii) extensive federal / state / local government testimony and press quotations informing the public that Atlanta area motels were a particular hotbed of sex trafficking, (iii) a long running expose in the premier Atlanta newspaper (the AJC) that exposed the extent of the sex trafficking problem at Atlanta area motels, and (iv) the general nature of Defendant's business involving renting private rooms cheaply by the day with each room having a bed where trafficking could occur.

### DEFENDANT HAD EXTENSIVE KNOWLEDGE OF TRAFFICKING AT ITS HOTEL

### B.     The Online Reviews

53.     Defendant had actual or constructive knowledge of publicly available online Google My Business reviews of the Jonesboro American Inn & Suites reporting widespread prostitution, sex trafficking, and other illicit activities occurring at the hotel.

54.     A 2018 review states:

> The worst place to stay the place is dirty the rooms dirty **the people that the hotel have Soliciting**

**around there is dirty there's human triffricing [sic] there all day the owners don't care** this place needs to be shutdown American inn & suites

55.   A March 27, 2019 review states:

If you value you life.... RUN! I stayed in this "hotel" for one night last week. First, I have to say.... I should have made a u-turn when I saw all the riff-raff hanging out in front of the building.  Against my better judgement, I got a single bed for one night.  I couldn't believe my bad luck**.  I got a room directly between TWO pimps that were working their girls ALL night**!  Bam-bam-bam-bam all night long.  Between customers the pimps would go at with the girls.  Very vocal.  Loud too.  **When there were customers in the rooms simultaneously, the pimps would stand in front of MY door, leaning over the rail and talk**...

56.   A 2020 review states:

Unless ur a drug dealer, prositute, drug head, or u need to live here weekly than the back of the hotel is where they will place you.

57.   A 2019 review states:

Horrible creepy motel... **Run down and trafficking heavy**... Glad I didnt stay there I met someone there and was extremely uncomfortable and out of place...

58.   A 2018 review states:

NEEDS RENOVATING AND SECURITY; BADLY! NOT A SAFE PLACE TO STAY! **DRUGS AND PROSTITUTION RUNNING RAMPANT!!!!** MORE POLICE PATROL NEEDED!

59.     A 2018 review states:

> 0 out of 5 stars! **This A damn TRAP hotel..** Covers got cigarette burn holes, floors was disgusting and stainy scared to take my shoes off, microwave door was hangin half off broken and dirty, Towels had dirty hard stains in em. TV's are old and **it's heavy dope slangers and prostitutes hangin out watchin the newcomers coming in.**

60.     A 2018 review states:

> Ghetto as hell it's a **big trap house and alot of prostitution goes on here** it's disgusting!

61.     A 2018 review states:

> Nothing but drugs and prostitutes.

62.     A 2018 review states:

> **Known as a high prostitution, drug area** it is advised unless you're into either you should steer clear.

63.     An April 2016 review states:

> **If you are looking for drugs a pimp a hooker beg bugs this is the place to be.** If you want a clean room bath towels this is not the place for you. Let alone the sewer smell when you open the bathtub faucet to cold water. And this we were told by the registry office worker from behind a bulletproof glass !!!!!!!!!!!!!!!!!!!!!!!! Disgusting!!!!!!

64.    Even positive reviews of the American Inn & Suite mention the pervasive and widespread prostitution and drug activities occurring at the property such as these reviews from 2017 and 2018:

    a.    It's not cleanest drugs deals goin on prostitution going on but it is close to the interstate.

    b.    This hotel is cool but it has position and drug dealers and stuff.

    c.    The rooms are halfway decent for a truck driver. But don't trust staff, terrible moods wings, high drug trafficking,    HOOKER    ALERT,CONSISTENT POLICE appearance's. NOT FOR CHILDREN.

65.    The reviews quoted in this Complaint, amongst others, will be produced in discovery.

66.    The online reviews provided Defendant with actual or constructive knowledge of sex trafficking, commercial sex, and the foreseeable risk of future sex trafficking ventures at the American Inn & Suites.

67.    The fact that Defendant Riti republishes online reviews on the homepage of its own website further supports an inference that the above referenced online reviews provided Defendant with actual or constructive knowledge of sex

trafficking, commercial sex, and the foreseeable risk of future sex trafficking ventures at the American Inn & Suites.[9]

## DEFENDANT HAD EXTENSIVE KNOWLEDGE OF TRAFFICKING AT ITS HOTEL

### C.    The Law Enforcement Activity

68.    Defendant had actual or constructive knowledge of law enforcement activity at the American Inn & Suites reporting widespread prostitution, sex trafficking, and other illicit activities occurring at the hotel.

69.    In the past seven (7) years, Clayton County Police have responded to more than 1,029 incidents at the Jonesboro American Inn & Suites. Oftentimes, the reports generated in response to those incidents describe the American Inn & Suites as being known for drug use, drug dealing, and prostitution.

70.    Based on the numerous arrests, investigations, and police reports, Defendant Riti knew or should have known of the sex trafficking and prostitution ventures operating out of the American Inn & Suites prior to Plaintiff's sex trafficking.

71.    Notable incidents that Defendant Riti knew about include:

a.    In September 2015, police responded to the American Inn & Suites to investigate claims made by a ministry outreach program

---

[9] *See* https://www.americaninnandsuitesga.com/ (last visited Feb. 11, 2022).

for sex trafficking victims that a minor was being trafficked for sex out of the hotel.

b.      In September 2015, police responded to the American Inn & Suites to investigate yet another claim related to multiple minors being sold for sex out of a hotel room rented by two adult men.

c.      In September 2017, police responded to a missing minor located at the American Inn & Suites where she was being sold for sex.

d.      In December 2017, a 28-year-old woman was arrested at the American Inn & Suites for prostitution and drugs. The woman told the arresting officer that she had sex with a male in exchange for a room at the hotel and that she would knock on the doors at the hotel soliciting guests for sex in exchange for money.

e.      In February 2018, police responded to an armed robbery at the American Inn & Suites where the victim reported a woman had approached him on the third floor and offered him sex in her hotel room for money. When the victim went to her room, he was met by two men who robbed, and pistol whipped him. The victim was issued a Criminal Trespass Warning by Defendant's employee Patel lshverbhai for soliciting sex on the property. The next day, officers returned to the American Inn & Suites in reference to a disturbance call made Mr. lshverbhai and arrested the victim in his hotel room.

f.      In May 2018, an officer patrolling the American Inn & Suites due to "on-going criminal activity involving prostitution, drug possession and use and armed robberies" encountered a suspicious person who claimed to be staying in room #242. Based on the officer's "knowledge and experience in the area, and the information from hotel employees," the corresponding arrest report stated that "room #242 and adjacent rooms are specifically known for alleged prostitution and drug activity."

g.      In April 2019, police responded to the American Inn & Suites to investigate two minors who were being sold for sex out of a hotel

room there to pay for the room and make a profit. One of the investigating police officers spoke with Defendant's front desk clerk who said he frequently had problems with minors staying at that room who weren't supposed to be there and are always gone before anyone can check on them.

h.      Undercover prostitution detail conducted at the American Inn & Suites by Clayton County Police also led to numerous prostitution-related arrests at the hotel in 2015, 2016 and 2017.

## DEFENDANT HAD EXTENSIVE
## KNOWLEDGE OF TRAFFICKING AT ITS HOTEL

### D.      The Prior Trafficking Lawsuit

72.     Prior to I.R.'s trafficking, Defendant knew or should have known of sex trafficking at the Jonesboro American Inn & Suites through a 2019 sex trafficking lawsuit that provided a detailed accounts of the victim's trafficking at the Jonesboro American Inn & Suites, f/k/a Americas Best Value Inn, in 2016.

73.     According to the 2019 lawsuit, it was a common occurrence at the Jonesboro American Inn & Suites for traffickers, girls and women to stand in open doorways to advertise their availability for commercial sex and for traffickers to solicit dates for their victims by hailing male individuals on the street from the hotel's balcony. [10]

---

[10] *See* Complaint at ¶¶ 11(d), 60, *H.M. v. Red Lion Hotels Corp. and Wyndham Hotels and Resorts, LLC*, Case No. 1:19-cv-04859-JPB (N.D. Ga. Oct. 29, 2019).

74.     Because the room doors at the hotel open from the rooms onto outdoor breezeways facing the hotel's parking lot, this type of trafficking activity in or around room entrances visible from the parking lot and should have been easily observed by hotel employees.

75.     Like the traffickers in the instant case, the traffickers in the 2019 lawsuit "frequently paid for the room one night at a time and always paid in cash ... was on a first name basis with the front desk manager and many members of the hotel staff and spoke with them on a frequent and regular basis."[11]

76.     Defendant was made aware of the 2016 sex trafficking at the Jonesboro American Inn & Suites after its front desk clerk was contacted by a news reporter on October 30, 2019.  At that time the clerk identified as Kash, told the reporter he was not aware of the sex trafficking lawsuit but "would ask the hotel's owner to contact the News."[12]

77.     Because Defendant managed and employed that front desk clerk at the time he spoke with the reporter, Defendant had specific and direct knowledge of sex trafficking at the Jonesboro American Inn & Suites prior to I.R.'s sex trafficking.

---

[11] Id. at ¶ 63.

[12] *See* Robin Kemp, *Woman files federal lawsuit against 2 Clayton County motels, alleging they knew she was sexually exploited,* News-Daily.com, Nov. 5, 2019, available at https://www.news-daily.com/news/woman-files-federal-lawsuit-against-2-clayton-county-motels-alleging-they knew-she-was-sexually/article_78a22f4a-fb57-11e9-a61e-2fb7d4b5b06c.html.

**DEFENDANT HAD KNOWLEDGE THAT IR WAS BEING TRAFFICKED**

78.    Defendant Riti directed, operated, supervised, monitored, managed, and/or employed all employees, managers, housekeepers, and other staff at the Jonesboro American Inn & Suites at all relevant times, giving Defendant specific and direct knowledge of sex trafficking, including the sex trafficking that victimized I.R., and other crimes at the hotel during the relevant period.

79.    Over the course of several weeks, the Jonesboro American Inn & Suites staff had ample opportunity to observe the numerous well-known and visible signs of a minor sex trafficking victim that I.R. exhibited, including her age and inappropriate appearance, physical deterioration, poor hygiene, fatigue, sleep deprivation, no control of or possession of money, loitering, soliciting male patrons, and heavy foot traffic outside her hotel room.

80.    This heavy foot traffic outside I.R.'s hotel room was constant, voluminous, and indicative of sex trafficking. For example, a daily parade of men arriving at the Jonesboro American Inn & Suites, parking their cars in the hotel's parking lot, entering rooms they did not rent, staying in the rooms for twenty (20) minutes, only to turn right back around to the parking lot and leave. I.R., however, rarely left those same rooms and on the occasions she did, I.R. could be found walking around the hotel premises, common areas, and approaches – even during

22

periods when school was in session for children of her age – wearing little clothing and talking to different adult men.

81.    Employees at the Jonesboro American Inn & Suites were familiar with Welch and her associates, due to their having stayed at the hotel while trafficking I.R. and at least one other minor victim there.

82.    Defendant's desk clerk and housekeeper accommodated and aided Welch and her associates in facilitating and assisting I.R.'s trafficking.

83.    On multiple occasions the front desk clerk observed heavy foot traffic outside of I.R.'s room through the hotel's surveillance cameras.  Rather than coming to I.R.'s assistance, the clerk knocked on the door of the room where I.R. was being trafficked, to warn Welch that the volume of foot traffic outside their room was too high and likely to draw law enforcement attention or guest complaints.

84.    When hotel housekeeping staff would come to the room where Welch was trafficking I.R., Welch repeatedly refused their services when they asked to clean the room and instead asked them for exorbitant amounts of towels and sheets. Housekeepers brought stacks of towels to Welch's room multiple times per day so I.R. could shower between each of the numerous buyers to whom she was sold.

85.   I.R.'s victimization followed a pattern that was readily observable and should have been obvious to hotel employees based on information available to the public at large and to the hotel industry.

86.   In 2016, the Department of Homeland Security ("DHS") issued guidelines on prevention of sex trafficking which identify numerous warning signs indicative of human trafficking at hotels that hotel staff should be vigilant in observing on the hotel premises, such as:

    a.   persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

    b.   persons who lack freedom of movement or are constantly monitored;

    c.   persons who have no control over or possession of money or ID;

    d.   persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

    e.   requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;

    f.   the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

    g.   extended stay with few or no personal possessions in the room;

    h.   excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

    i.   the same person reserves multiple rooms;

    j.   a room is rented hourly, less than a day, or for an atypical extended

24

stay;

k.  attempts to sell items to or beg from patrons or staff;

l.  cars in the parking lot regularly parked backward, so the license plates are not visible;

m.  loitering and solicitation of male patrons;

n.  waiting at a table or bar and picked up by a male (trafficker or customer);

o.  persons asking staff or patrons for food or money; and

p.  persons taking cash or receipts left on tables.[13]

87.    Prior to I.R.'s trafficking, the End Child Prostitution and Trafficking (ECPAT-USA) also published a list of position specific indicators of human trafficking that hotel staff should recognize to combat trafficking, such as: paying for rooms using cash, paying for multi-day stays one day at a time, escorts  various men  into  the  room  and  lingers until  they  leave,  watching  the  door, room is frequented  by  different  men, insists  on  little  or  no  housekeeping, excessive requests  for  towels  and  sheets, wearing the same attire or attire that is revealing or  inappropriate  for  the  weather,  excess  lingerie,  discarded  condoms  and lubricants, use of websites  with  adult  classified  ads and possessing few personal

---

[13] U.S. Dep't of Homeland Security, *Human Trafficking and the Hospitality Industry*, available at https://www.dhs.gov/blue-campaign/hospitalityindustry (last visited Feb 10, 2022).

belongings.[14]

88.     Over the course of several weeks when I.R. was trafficked at the Jonesboro American Inn & Suites, both I.R. and the room where I.R. was trafficked exhibited numerous well-known signs of trafficking identified in the DHS guidance and by ECPAT-USA that gave Defendant and its employees constructive or actual knowledge of I.R.'s sex trafficking, including:

a.      I.R wearing scantily clad clothing when she walked around the premises, common areas, and while escorting various men into the room and lingering until they leave.

b.      I.R being escorted and monitored by Welch in the hotel, around the premises and common areas during periods when school was in session for children of her age.

c.      I.R. checking in with only a small duffel bag while staying at the hotel for approximately five days at a time.

d.      Welch (or her associates) always paying in cash for hotel rooms.

e.      Welch (or her associates) paying one night at a time for five consecutive days and booking the next night's stay before check-out time.

f.      Numerous men would park, stay in the room for approximately twenty minutes, and then leave, while I.R. would rarely leave the room for days at a time, while a daily parade of male buyers loitered in the hallway outside I.R.'s room waiting for "their turn."

---

[14] *See* ECPAT-USA, *Human Trafficking Indicators*, available at https://www.ecpatusa.org/s/ECPATUSA_hotelindicatorsheets.pdf (last visited Feb 11, 2022).

g.      I.R. (a fifteen-year-old girl) and Welch (an adult woman) sharing a room with large amounts of used condoms, empty lube bottles, lingerie, sex toys, bodily fluids on the sheets and towels, and other sex-related paraphernalia in the room.

h.      Welch constantly turning away housekeeping from the room where I.R. was being trafficked.

i.      Housekeeping brining stacks of towels multiple times per day to Welch's room so I.R. could shower between each of the numerous buyers to whom she was sold.

j.      Hotel staff warning Welch about the high volume of foot traffic outside the room where she was trafficking I.R. after observing it through the hotel's surveillance cameras.

89.    Rather than taking reasonable steps to prevent sex trafficking, Defendant – in the quest for profits – created and maintained business models that attracts, facilitates and encourages the commercial sex market by providing a private and anonymous venue for traffickers and buyers alike.

90.    Upon information and belief, Defendant kept a vending machine prominently displayed in the Jonesboro American Inn & Suites lobby stocked with condoms at all relevant times. Selling condoms demonstrates that Defendant understood that its hotel clientele consisted of buyers and sellers of commercial sex and adapted its operations accordingly.

91.    Defendant was aware of the short-term rentals of it rooms at the Jonesboro American Inn & Suites by buyers of commercial sex and the explicit and

apparent purpose for which those rooms were rented. In order to capitalize on these short-term rentals, Defendant created and enforced a policy that no refunds would be given on rooms after ten (10) minutes and this policy can be found on a publicly available online review from 2019 stating "No refunds after 10 minutes."

92.     This policy ensures that Defendant will continue to profit from its ongoing reputation for privacy, discretion, and the facilitation of commercial sex by requiring buyers and traffickers to pay a full day's price regardless of how much time the sex acts take to accomplish.

93.     I.R.'s sex trafficking at the Jonesboro American Inn & Suites was a foreseeable and preventable result of Defendant failing to implement reasonable, appropriate, and adequate measures to deter sex trafficking at its hotel and failing to prevent I.R.'s continued victimization by ignoring her obvious, well-known signs and indicators of sex trafficking.

## COUNT 1:  TVPA CIVIL BENEFICIARY CLAIMS

94.     The Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595(a) ("TVPA") provides a civil cause of action to victims like I.R. against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in" minor sex trafficking or forced labor sex trafficking.

28

95.     Under the civil beneficiary provision of 28 U.S.C. § 1595(a), a person is liable for knowingly benefiting from participating in a venture if the defendant "knew or should have known" that the venture committed acts that violated the criminal provisions of the Trafficking Victims Protection Reauthorization Act.

96.     The "knew or should have known" language specifies a negligence standard. *See, e.g., Faragher v. City of Boca Raton*, 524 U.S. 775, 799-800 (1998) (acknowledging that "knew or should have known" refers to a negligence standard); *Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 (11th Cir. 2020) (holding that a duty arises in a maritime negligence case when the defendant had actual or constructive knowledge which "hinges on whether it knew or should have known about the" risk creating condition); *see also Ricchio v. Bijal, Inc.*, 424 F. Supp. 3d 182, 193-94 (D. Mass. 2019) (collecting cases on this issue); *A.B. v. Marriott Int'l, Inc.*, 455 F.Supp.3d 171 (E.D. Pa. 2020) (also collecting cases on this issue).

97.     Defendant Riti "knowingly benefit[ed] financially. . .from participation in a venture" because Welch and her associates gave Defendant money and in exchange Defendant rented Welch and her associates hotel rooms. *See, e.g., Ricchio v. McLean,* 853 F.3d 553, 556 (1st Cir. 2017) ("knowingly benefited" prong satisfied by renting room); *Ricchio v. Bijal*, 386 F. Supp. 3d at 131 ("renting of a single room for a short period could constitute a 'benefit' within the meaning of the statute.");

*H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio 2019) (finding room rental itself sufficient and rejecting Defendant's argument that there must be a causal relationship between the room rental and the sex trafficking); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019).

98.    The venture repeatedly committed acts that violate the criminal provisions of the Trafficking Victims Protection Reauthorization Act (minor sex trafficking) because Welch and her associates knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and/or solicited I.R. to engage in commercial sex acts in violation 18 U.S.C. § 1591(a)(1) in the hotel rooms that Welch and her associates rented from Defendant.

99.    The venture also repeatedly committed acts that violate the criminal provisions of the Trafficking Victims Protection Reauthorization Act (forced labor sex trafficking) because Welch knowingly provided the labor and services of I.R. by means of force, threats of force, physical restraint, threats of physical restraint, means of serious harm, threats of serious harm, means of a scheme or plan or pattern intended to cause I.R. to believe that if she did not perform such labor or services that she would suffer serious harm or physical restraint when Welch and her associates forced I.R. to engage in commercial sex acts in violation 18 U.S.C. § 1589(a) in the hotel rooms that Welch and her associates rented from Defendant.

100.   Defendant Riti knew or should have known that the venture was engaged in actions that constituted minor sex trafficking and/or forced labor sex trafficking for all of the reasons listed in this Complaint to include but not be limited to:

    a.    Defendant's industry knowledge on what sex trafficking looks like;

    b.    Defendant's online reviews providing notice that such sex trafficking was taking place at its hotel;

    c.    Defendant's interactions and observation of law enforcement on its property providing notice that sex trafficking was taking place at its hotel;

    d.    Defendant's knowledge of the prior lawsuit alleging sex trafficking taking place at its hotel;

    e.    Defendant's decision to act as a lookout for the sex trafficking venture;

    f.    Defendant's observations of I.R. while I.R. was on property;

    g.    Defendant's observation of the room I.R. was trafficked in during I.R.'s trafficking at the property, and

    h.    Defendant's observations of Welch and her associates.

*See, e.g., M.A. v. Wyndham Hotels & Resorts, Inc*., 425 F. Supp. 3d 959, 962 (S.D. Ohio 2019("[]Plaintiff has alleged sufficient facts to show Defendants 'participated in a venture' under § 1595 by alleging that Defendants rented rooms to people it knew or should have known were engaged in sex trafficking.")

101.    The venture in which Defendant participated in affected interstate commerce for numerous reasons including the sale and use of condoms, the purchase and use of cleaning supplies from out of state, the use of credit cards to post online advertisements through MegaPersonals.com and List Crawler for selling I.R. in a commercial sex act, the use of interstate highways to transport I.R. to the motel by her traffickers (and her associated), and other reasons to be proven at trial.

102.    Defendant is directly and vicariously liable under § 1595(a) for the actions of its employees, agents, and representatives.

103.    I.R. has suffered substantial physical, emotional, and psychological harm and other damages as a direct and proximate result of Defendant's participation in this sex trafficking venture at the American Inn & Suites.

## COUNT 2:  STATE LAW RICO CLAIMS

104.    Defendant Riti violated Georgia's Racketeer Influenced and Corrupt Organizations Act ("Georgia RICO") when it acquired and maintained, directly and indirectly, an interest in money through a pattern of racketeering activity at the Jonesboro American Inn & Suites. O.C.G.A. § 16-14-4(a)

105.    Defendant Riti also violated Georgia RICO when it conspired and endeavored to acquire and maintain, directly and indirectly, an interest in money

through a pattern of racketeering activity at the Jonesboro American Inn & Suites. O.C.G.A. § 16-14-4(c).

106.   Defendant Riti knowingly and willfully joined a conspiracy at the Jonesboro American Inn & Suites, which contained a common plan or purpose to commit two or more acts of racketeering activity, through which an interest in and control of money would be acquired and maintained, either directly or indirectly from the Jonesboro American Inn & Suites.

107.   Defendant Riti's acts of racketeering had the same or similar accomplices, including, but not limited to the sex traffickers and buyers. Defendant, as a party to the crime, and as co-conspirators, while having and exercising control over the use of the Jonesboro American Inn & Suites, devised an unlawful scheme designed to maximize profits to the detriment of guests and invitees —no matter the means or the cost.

108.   Defendant Riti engaged in more than two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions by keeping a place of prostitution and by pimping in violation of Georgia law. O.C.G.A. §16-14-3(5)(A)(vii) (both keeping a place of prostitution and pimping are predicate acts under Georgia RICO); *see also* O.C.G.A. § 16-6-10 (keeping a place of prostitution); O.C.G.A. § 16-6-11(5) (pimping).

109.   While sex trafficked out of Defendant's American Inn & Suites, countless men paid money to have sex with I.R. in the hotel rooms Defendant Riti rented to I.R.'s trafficker Welch and her associates.

110.   Defendant Riti kept a place of prostitution by receiving money and by acting individually, as parties to the crime, and as co-conspirators, while having and exercising control over the Jonesboro American Inn & Suites, which offered seclusion or shelter for the practice of prostitution, knowingly granting and permitting the use of that location for the purpose of prostitution, in violation of O.C.G.A. § 16-6-10. This constitutes racketeering activity. O.C.G.A. § 16-14-3(5)(A)(vii).

111.   Defendant Riti was also "pimping" by receiving proceeds and profits derived from prostitution and aiding and abetting Welch and her associates in the commission of Welch's plan to force others into commercial sex acts.

112.   While Defendant Riti had control over the use the Jonesboro American Inn & Suites, which offered seclusion or shelter for the practice of prostitution, it knowingly granted and permitted its use for the purpose of prostitution.

113.   Defendant Riti engaged in more than two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions.

114.   The acts of racketeering activity were interrelated by distinguishing characteristics and were not isolated incidents.

115.   Defendant Riti's acts of racketeering had the same or similar intents, including but not limited to obtaining money, directly or indirectly, through a pattern of racketeering activity.

116.   Defendant Riti's acts of racketeering had the same or similar victims, including, but not limited to, Plaintiff I.R. and other victims who were engaging in sexual acts in exchange for money at the Jonesboro American Inn & Suites.

117.   The racketeering violations committed by Defendant involved transactions affecting I.R, and as a result, Plaintiff's injuries flow directly from the pattern of racketeering violations committed by Defendant.

118.   I.R. has suffered substantial physical, emotional, and psychological harm and other damages as a direct and proximate result of Defendant Riti's violations of Georgia RICO.

119.   As a result of Defendant Riti's racketeering violations, Defendant Riti is liable to Plaintiff I.R. for three times her damages in an amount to be proven at trial, her attorneys' fees, and her costs of investigation and litigation.

120.   The wrongful actions of Defendant Riti constitute willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise

the presumption of conscious indifference to consequences, rendering them liable to I.R. for punitive damages without limit or cap pursuant to O.C.G.A. § 51-12-5.1.

### COUNT 3:  STATE LAW NEGLIGENCE ALLEGATIONS

121.   At all relevant times, Defendant Riti owed a duty to invitees to the Jonesboro American Inn & Suites, including I.R., to exercise ordinary care in keeping the premises and approaches of Jonesboro American Inn & Suites safe. *See* O.C.G.A. § 51-3-1.

122.   At all relevant times, Defendant Riti had a duty NOT to aid in the creation of, and NOT to maintain, a continuous and regularly repeated dangerous criminal condition at its property. *See* O.C.G.A. § 44-1-4.

123.   Defendant Riti had actual and constructive knowledge of criminal activity at the premises that made the repeated rapes of I.R. foreseeable to Defendant Riti.

124.   Defendant Riti knew or should have known the steps to take to prevent the Jonesboro American Inn & Suites from being used as a venue for sex trafficking, including I.R's minor sex trafficking, but negligently failed to remedy, prevent or report the sex trafficking.

125.   Defendant Riti was negligent and said negligence proximately caused Plaintiff I.R.'s injuries in the following ways, to-wit:

a.     Negligently violating O.C.G.A. § 51-3-1 by failing to use ordinary care to keep the premises safe;

b.     Negligently violating O.C.G.A. § 41-1-1 by creating and maintaining a nuisance;

c.     Negligently failing to provide appropriate and effective security personnel during I.R.'s minor sex trafficking at the hotel;

d.     Negligently failing to properly inspect and maintain the premises;

e.     Negligently failing to properly train and supervise its employees regarding sex trafficking and other sex crimes at the hotel;

f.     Negligently failing to properly retain, hire, train, and supervise said employees;

g.     Negligently failing to ensure business policies, systems, and security were adequately followed and implemented;

h.     Negligently failing to respond to online reviews and publicly available information;

i.     Negligently failing to prevent loitering, pandering, prostitution and trespassing;

j.     Negligently failing to remove loiterers, panderers, prostitutes, pimps and trespassers;

k.     Negligently failing to inspect, patrol, or appropriately monitor the property;

l.     Negligently failing to provide adequate lighting and employ other available security measures, personnel, and devices, such as controlled access, adequate signage, cameras, patrols, inspections, physical, and other landscaping adjustments, and other measures available;

    m.    Negligently failing to remediate a long history of crime at the Jonesboro American Inn & Suites and the area nearby;

    n.    Negligently failing to warn invitees of known hazards at the property;

    o.    Negligently representing to invitees that the property was safe; and

    p.    Other negligent acts that violated Georgia common law to be proved at trial.

126.   Each of the foregoing acts and omissions constitute an independent act of negligence on the part of Defendant Riti and one or more or all above stated acts was the proximate causes of the injuries sustained by I.R.

127.   Defendant Riti is liable for I.R.'s injuries sustained, pain and suffering, the expenses of treatment, and all other elements of damages allowed under the laws of the State of Georgia, including all special, compensatory, incidental, consequential, economic, and punitive damages.

128.   Defendant Riti is liable for the minor sex trafficking of Plaintiff I.R.

## PROXIMATE CAUSE AND DAMAGES

129.   As a direct and proximate result of Defendant Riti's acts and omissions I.R. suffered substantial physical, emotional, and psychological harm and other damages.

130.   Defendant is joint and severally liable with Welch, her associates, and

any other non-party actors who participated in the trafficking for the indivisible injuries that the venture proximately caused to I.R.

131.    Defendant is liable for I.R.'s damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

132.    Defendant is liable for treble damages under Georgia State RICO law.

133.    Plaintiff I.R. brings each and every claim for damages permissible under the law against Defendant Riti for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, and all compensatory, special, actual, general, and punitive damages permissible under the law, including, but not limited to:

    a.    Personal injuries;

    b.    Past, present and future pain and suffering;

    c.    Disability;

    d.    Disfigurement;

    e.    Mental anguish;

    f.    Loss of the capacity for the enjoyment of life;

    g.    Loss of earning capacity;

    h.    Lost wages;

    i.    Diminished capacity to labor;

    j.    Incidental expenses;

    k.    Past, present and future medical expenses;

    l.    Permanent injuries;

    m.    Attorney's fees;

    n.    Punitive damages; and

    o.    Consequential damages to be proven at trial.

134.   Punitive damages should be imposed upon the Defendant without limitation or cap for its actions which are explained more fully above.

135.   Defendant Riti is also liable for paying Plaintiff's attorneys fees and litigation expenses pursuant to the TVPA, Georgia RICO, and O.C.G.A. § 13-6-11 because Defendant has acted in bad faith in the underlying transaction as shown herein.

136.   Each of the forgoing acts and omissions constitute an independent act of negligence on the part of the Defendant, and one or more or all of the above stated acts were the proximate causes of the injuries and damages sustained by the Plaintiff.

## CONCLUSION AND PRAYER FOR RELIEF

137.   This Complaint seeks to award damages to Plaintiff as the mother and next friend of I.R., a minor, and therefore every allegation of the Complaint that

seeks relief to I.R. individually should also be interpreted as applying to Plaintiff on I.R's behalf.

138.   I.R. will likely reach her eighteenth (18) birthday prior to the resolution of this lawsuit and therefore every allegation of this Complaint that seeks relief for Plaintiff should also be interpreted as applying to I.R. individually.

139.   To the extent that an incident described in this Complaint that caused injuries to Plaintiff and/or I.R. took place over two (2) years ago, claims related to that incident are not barred by Georgia's two-year statute of limitations for personal injury claims because the statute of limitations has been tolled for those claims since the incidents have been reported to the police but neither Welch nor her associates have been convicted of the crimes related thereto. *See* O.C.G.A. § 9-3-99; *see also Harrison v. McAfee*, 338 Ga. App. 393 (2016) (*en banc*).

WHEREFORE, Plaintiff prays for a judgment against the Defendant and for the following:

1)   That process and summons issue requiring Defendant to appear as provided by law to answer the allegations of the Complaint;

2)   Plaintiff be awarded actual damages in amounts to be shown at trial;

3)   Plaintiff be awarded all general, special, compensatory, economic, and other allowable damages in accordance with the enlightened conscience of an impartial jury from the Defendant;

4)    Plaintiff be awarded her attorneys' fees and case expenses as allowed by law;

5)    Treble damages be imposed on the Defendant;

6)    Punitive damages be imposed upon the Defendant;

7)    Plaintiff be awarded a trial by jury; and

8)    Plaintiff have such other relief as this Court deems just and appropriate under the circumstances.


This 28th day of February 2022.


*/s/ Matthew B. Stoddard* ___
Matthew B. Stoddard, Esq.
Ga. Bar No.: 558215
Janelle E. Zabresky, Esq.
Ga. Bar No.: 385383
THE STODDARD FIRM
1534 N Decatur Road
P: 470-467-2200
F: 470-467-1300
matt@LegalHelpGa.com
janelle@LegalHelpGa.com
**Attorneys for Plaintiff**